UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| EDWARD N. GOMBERG and SYNAIR CORPORATION, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-cv-356 |
| | ) | |
| LARRY L. SHOSID and BELL, NUNNALLY & MARTIN, LLP, | ) | Judge Mattice |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Edward N. Gomberg and Synair Corporation ("Synair") bring this action

against Larry L. Shosid and Bell, Nunnally & Martin ("Bell Nunnally"), alleging professional

negligence, breach of contract, and fraud.

Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(2), 12(b)(3), and 12(b)(6).

For the reasons stated below, Defendants' Motion to Dismiss is **DENIED**.

## I.     PERSONAL JURISDICTION

Pursuant to Rule 12(b)(2), Defendants move to dismiss this action for lack of

personal jurisdiction.

### A.     Standard

When the issue of personal jurisdiction is raised by way of a motion under Rule

12(b)(2), the plaintiff has the burden of establishing that jurisdiction exists. *Theunissen v.*

*Matthews*, 935 F.2d 1254, 1458 (6th Cir. 1991). The plaintiff may not meet its burden by

simply standing on its pleadings; rather, the plaintiff must set forth, by affidavit or otherwise, specific facts showing that the Court has jurisdiction. *Id.*

Presented with a properly supported 12(b)(2) motion and opposition, the Court has three procedural alternatives: decide the motion upon the affidavits alone, permit discovery on the motion, or conduct an evidentiary hearing to resolve an factual questions. *Id.*; *Kelly v. Int'l Capital Res., Inc.*, 231 F.R.D. 502, 508-09 (M.D. Tenn. 2005). If the Court does not conduct an evidentiary hearing, then the plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Theunissen*, 935 F.2d at 1458; *Kelly*, 231 F.R.D. at 509. In such an instance, the pleadings and affidavits are viewed in the light most favorable to the plaintiff, and the Court will not consider the controverting assertions of the defendant. *Theunissen*, 935 F.2d at 1458-59; *Kelly*, 231 F.R.D. at 509. If the Court does conduct an evidentiary hearing, then the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *Kelly*, 231 F.R.D. at 509.

**B.    Facts**

Because the Court has not held an evidentiary hearing, the Court must view the pleadings and affidavits in the light most favorable to Plaintiffs and must not consider facts proffered by Defendants that conflict with facts proffered by Plaintiffs. In accordance with such requirements, the relevant facts are as follows.

Plaintiff Synair is incorporated in Delaware, with its principal place of business in Tennessee. (Court Doc. No. 1-1, Notice of Removal 2.) At the relevant time, Plaintiff Gomberg was the President, Chairman of the Board, and majority shareholder of Synair, and he is a citizen of California. (*Id.*; Court Doc. No. 1-4, Compl. ¶ I.) Defendant Bell

Nunnally is a law firm organized and with its principal place of business in Texas. (Notice of Removal 2.) Defendant Shosid is an attorney employed by Bell Nunnally and is a citizen of Texas. (*Id.*; Compl. ¶ I.)

Plaintiffs and Defendants became associated when David Mahmood, an investment banker, recommended to Mr. Gomberg that he consider hiring Mr. Shosid and his law firm to represent Synair in connection with a particular transaction. (Court Doc. No. 12-2, Shosid Dep. 7-8.) Mr. Mahmood then arranged a meeting between Mr. Gomberg and Mr. Shosid. (*Id.* at 8.) After such meeting, Mr. Gomberg retained Bell Nunnally to represent Synair and others in connection with the transaction. On June 22, 2004, Mr. Shosid sent Mr. Gomberg a letter outlining the law firm's billing practices and certain other issues. (Court Doc. No. 8-1, Shosid Aff. Ex. A.) The letter states that the firm is representing Synair in the sale of certain assets, the Edward N. and Helen M. Gomberg Trust (the "Trust")[1] in the sale of certain real estate, and Chemical Innovations, Limited ("CIL")[2] in the sale of stock. (*Id.* at 1.) All three components were together referred to as the "Transaction." (*Id.*)

At the time Bell Nunnally began representing Synair, Synair was in default under its credit facility with AmSouth Bank ("AmSouth"), its senior lender. (Shosid Dep. 18-19.) Synair had determined that it would sell the assets that were the subject of the credit facility – the assets associated with Synair's Amnicola facility – in order to pay off AmSouth. (*Id.* at 19; Shosid Aff. ¶ 13.) Prior to Bell Nunnally's involvement in the transaction, Mr.

---

[1]     The Trust is organized under California law. (Shosid Aff. ¶ 11.)

[2]     CIL is a United Kingdom entity. (Shosid Aff. ¶ 11.)

Gomberg, Synair, and AmSouth had already negotiated certain aspects of the transaction related to the loan agreement between Synair and AmSouth. (Compl. ¶ XI.) The assets associated with the Amnicola facility were to be sold to British Vita, a British company. (Shosid Aff. ¶ 14.) AmSouth would receive a partial repayment of its financing, and Synair would receive the remainder of the proceeds of the sale of assets. (*Id.*) Synair's obligations to AmSouth going forward, after the sale of the Amnicola facility, would be secured entirely by the assets associated with Synair's other facility in Tennessee – the Hawthorne plant – and not by Synair's accounts receivable. (Compl. ¶ XI.) Additionally, the pre-existing subordination agreement would be eliminated in its entirety, meaning that the right of Mr. Gomberg and Synair to receive a certain amount of the proceeds from the sale of the Hawthorne facility would not be subordinate to AmSouth's right to receive the remainder of what it was owed. (*Id.*) Based on these results of the negotiation, Mr. Gomberg instructed Mr. Shosid to negotiate and draft documentation that accurately reflected the agreement reached between Mr. Gomberg, Synair, and AmSouth. (*Id.*)

As Mr. Shosid described it, the transaction was, in general terms, a sale of the Amnicola business, which required the negotiation, preparation, and review of the many documents associated with the sale. (Shosid Dep. 42-43.) Because of AmSouth's lien on a portion of the assets, however, Bell Nunnally's representation of Synair also included the negotiation of modifications to the loan agreement, as described above. (*Id.* at 19.) Consequently, Mr. Shosid reviewed, revised, and negotiated such modifications. (*Id.* at 19, 74, 76-79.) Mr. Shosid described the negotiation of such modifications to the loan agreement as being "necessary" to, though "not a significant piece of," the transaction. (*Id.* at 42.) The negotiated modifications to the loan agreement were eventually incorporated

-4-

into an amended and restated loan agreement. (*See* Court Doc. No. 12-3, Am. & Restated Loan Agreement.)

Bell Nunnally also issued an opinion letter related to the amended and restated loan agreement in which the firm opined as follows: (1) Synair is a validly existing entity with the power to enter into the loan agreement; (2) the execution and performance of the loan agreement was authorized through the proper channels at Synair and will not contravene any judgment, order, or prior agreement to which Synair is a party; (3) the necessary and relevant documents were executed by Synair and are valid, binding obligations of Synair; and (4) Synair is not a party to any pending litigation, except as already disclosed. (Shosid Aff. Ex. B. 2.) The opinions given by Bell Nunnally were subject to the qualification that the firm expressed no opinions with regard to the laws of the state of Tennessee. (*Id.* at 3.)

To facilitate the closing of the transaction, Mr. Shosid obtained signature pages executed by Mr. Gomberg and sent those signature pages to AmSouth's counsel in Tennessee. (*Id.* at 53-54.) The signature pages executed by Mr. Gomberg were eventually attached to documents that were inconsistent with Mr. Gomberg's above-described understanding of the agreement: specifically, the amended and restated loan agreement included a subordination clause giving AmSouth priority over all of Mr. Gomberg's rights and claims. (Compl. ¶¶ XVII-XVIII, XX.) Thus, Mr. Gomberg claims that the amended and restated agreement, which was reviewed, revised, and negotiated by Mr. Shosid, did not accurately memorialize the agreement reached by Mr. Gomberg, Synair, and AmSouth, and that Mr. Gomberg never agreed to sign the subordination agreement.

After the closing of the transaction, AmSouth foreclosed on the Hawthorne facility, prompting Mr. Gomberg and Synair to file suit in the Chancery Court of Hamilton County,

Tennessee.  (*See generally* Court Doc. No. 13, Richardson Aff.)  Mr. Gomberg and Synair have obtained a temporary injunction prohibiting the foreclosure sale of the facility and are seeking to rescind the amended and restated loan agreement.  (*Id.*)  In the alternative, they seek the reformation of the agreement in accordance with Mr. Gomberg's understanding of their agreement with respect to the subordination issue.  (*Id.*)

### C.    Analysis

In diversity cases, federal courts apply the law of the forum state, subject to constitutional limitations, to determine whether personal jurisdiction exists.  *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994).  Thus, a court must look not only to the forum state's long-arm statute, but also to the due process requirements of the Constitution.    *Nationwide Mut. Ins.*, 91 F.3d at 793; *Reynolds*, 23 F.3d at 1115. Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214, expands the jurisdiction of Tennessee courts to the full limit permitted by due process.  *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985).  When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge, and the Court need only determine whether the exercise of personal jurisdiction violates constitutional due process. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

The Due Process Clause permits the exercise of personal jurisdiction over a defendant if either general jurisdiction or specific jurisdiction exists.  *Id.*  General jurisdiction exists when a defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims . . . ."  *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997).  Plaintiffs

-6-

do not argue that Defendants had continuous and systematic contacts with Tennessee sufficient to confer general jurisdiction; rather, Plaintiffs argue that specific jurisdiction exists. Specific jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.* (citing various cases). The Sixth Circuit has developed a three-pronged test to determine whether specific jurisdiction exists over a particular defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### 1. *Purposeful Availment*

The first prong of the *Mohasco* test requires that the defendant purposefully avail itself of the privilege of conducting activities in the forum state. *Burger King*, 471 U.S. at 475; *Nationwide Mut. Ins.*, 91 F.3d at 795; *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989). The "purposeful availment" requirement ensures that a defendant is not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or as the result of the unilateral activity of another party or a third person. *Burger King*, 471 U.S. at 475. "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State. Thus where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because

his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 475-76 (citations and internal quotation marks omitted).  In other words, purposeful availment is "something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [forum state] opportunities." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002) (citing *Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 819 (Mich. 1978)).

Physical presence in the forum state is not required for personal jurisdiction, and a defendant could be found to be subject to personal jurisdiction in the forum state even if that defendant never physically entered the state.  *Burger King*, 471 U.S. at 476.  Telephone calls and letters sent into the forum state by the defendant may, but do not necessarily, establish personal jurisdiction. *See Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001); *LAK*, 885 F.2d at 1301.  Likewise, the creation of a contract with a person in the forum state does not, standing alone, automatically establish sufficient minimum contacts with the forum state.  *Burger King*, 471 U.S. at 478.  In addition, as noted above, the unilateral activity of another individual cannot satisfy the requirement of contact with the forum state by the defendant. *Nationwide Mut. Ins.*, 91 F.3d at 795.  With any asserted contact with the forum state, it is the quality of that contact which is important, and the Court must determine whether the quality of the contact demonstrates purposeful availment.  *LAK*, 885 F.2d at 1301.

In this instance, the contacts of Mr. Shosid and Bell Nunnally with the state of Tennessee are, in general terms, as follows: Mr. Shosid and Bell Nunnally agreed to and did represent Synair, a corporation with its principal place of business in Tennessee, in connection with a transaction involving facilities located in Tennessee; Mr. Shosid communicated with AmSouth's counsel in Tennessee; and Mr. Shosid sent signature pages related to the transaction to Tennessee.

The mere fact that Bell Nunnally entered into a contract with a Tennessee citizen does not mean that Bell Nunnally purposefully availed itself of the benefits and protections of Tennessee law. *Burger King*, 471 U.S. at 478; *Kerry Steel*, 106 F.3d at 151. However, the subject of the contract in this instance was assets located in Tennessee, and the purpose of the contract was to provide for the sale of such assets. Although Mr. Shosid never physically entered the state of Tennessee, such fact is not dispositive of the issue, as physical presence in the forum state is not a prerequisite for personal jurisdiction. *Burger King*, 471 U.S. at 476. Mr. Shosid did communicate with individuals in Tennessee, *see Neal*, 270 F.3d at 332; however, such communications were primarily with AmSouth's Tennessee counsel, and their location was a decision over which Bell Nunnally and Mr. Shosid had no control, *see Nationwide Mut. Ins.*, 91 F.3d at 795. Mr. Shosid also sent signature pages into Tennessee, and it is partially those signature pages that give rise to this action. *Neal*, 270 F.3d at 332.

Plaintiffs assert that this case is similar to *Masada Investment Corp. v. Allen*, 697 S.W.2d 332 (Tenn. 1985). In *Masada*, Robert Allen, a Texas attorney, represented Richard Hockert, a Texas real estate broker, in a real estate transaction involving Tennessee property. *Id.* at 333. WTFF Associates ("WTFF"), a Tennessee limited partnership, wanted

-9-

to sell a building in Memphis. *Id.* WTFF had acquired the building by warranty deed from Masada Investment Corporation, a Tennessee corporation, which held title to the property for the benefit of Masada-Memphis Venture, a Tennessee limited partnership. *Id.* Hockert originally planned to buy the building from WTFF and then sell it to University Real Estate Investors-81 ("University"), a California partnership. *Id.* Hockert requested that Allen prepare the warranty deed and the agreement of sale and purchase. *Id.* At some point, the parties decided to restructure the transaction. *Id.* Under the new structure, WTFF would sell the property directly to University, and Hockert would be compensated as a consultant. *Id.*

Thereafter, Allen sent the warranty deed and agreement of sale and purchase he had drafted to Tennessee for execution by WTFF. *Id.* Because of an earlier error, an incorrect legal description of the property being sold was attached to the documents. *Id.* Although the correct legal description was furnished several days later, the correct description was never substituted for the incorrect description, and the documents were executed by WTFF in Knoxville, Tennessee, with the incorrect description. *Id.* Allen held the documents in trust in Texas until closing. *Id.* When the erroneous legal description was discovered, University brought suit to quiet title, and a third-party action was filed against Hockert and Allen, alleging negligence and breach of trust. *Id.* at 333-34.

The court in *Masada* concluded that Allen was subject to personal jurisdiction in Tennessee. *Id.* at 335. The court pointed to the fact that, while Allen never entered Tennessee, his work was a "vital component" of the transaction. *Id.* Further, in the course of Allen's preparation of the legal documents, he took independent action, including conversing with WTFF's attorney in Knoxville, drafting documents to be in accord with

-10-

Tennessee law, sending the completed documents into Tennessee for execution, and holding the documents in his office until closing. *Id.* Allen's legal work would control the sale of Tennessee real estate worth several million dollars by a Tennessee limited partnership subject to the laws of Tennessee. *Id.* The court concluded that, "[b]y wilfully and knowingly choosing to prepare legal documents which would be filed in Tennessee and be of great consequence here, Allen purposely availed himself of the privilege of doing business within [Tennessee]. This litigation itself serves to highlight the importance of Allen's work product. While Allen had limited physical contact with [Tennessee], he purposefully directed his activities toward the citizens of this state and his negligent actions resulted in injury here. Allen should have reasonably anticipated having to defend his actions in a Tennessee court." *Id.*

Defendants attempt to distinguish *Masada* on several grounds. Defendants first argue that, whereas Allen took "independent actions," Mr. Shosid and Bell Nunnally performed only those actions listed in the retainer agreement. Defendants also assert that Mr. Shosid did not draft documents related to the transaction, but merely reviewed documents prepared by AmSouth's counsel and negotiated favorable revisions. Further, Defendants argue that *Masada* only involved a single real estate transaction, while the instant case involves a multiparty, multi-state, and international transaction. Defendants also contend that the location of the real property in Tennessee – which was a critical factor in *Masada* – was only incidental in the case at bar. In addition, Defendants argue that, while Allen prepared documents under Tennessee law, Mr. Shosid and Bell Nunnally did not undertake any services in the course of the representation that required them to construe Tennessee law. They also issued an opinion letter in connection with the

transaction specifically stating that they were not giving any opinions with respect to Tennessee law. Defendants also argue that, while the majority of the parties in *Masada* were Tennessee entities, the majority of the entities in the instant case are foreign entities: Synair is a Delaware corporation, CIL is a U.K. corporation, the Trust is a California trust, AmSouth is an Alabama banking association, and British Vita is a British company.

Although Defendants have attempted to distinguish Allen's actions in *Masada* from Mr. Shosid's actions in this case, the Court finds that the actions of Mr. Shosid and Bell Nunnally are quite similar to Allen's actions and that such actions by Defendants evidence purposeful availment of the privilege of conducting business in Tennessee. First, Bell Nunnally undertook the representation of a Delaware corporation with strong and specific ties to Tennessee, its principal place of business being located here, whereas in *Masada* the Texas attorney undertook the representation of a Texas client. In this respect, this action seems to present a stronger case for personal jurisdiction in Tennessee than *Masada*. Second, like Allen's work in *Masada*, Mr. Shosid's work on the amended and restated loan agreement was a necessary part of the transaction. Third, like Allen, Mr. Shosid took independent action in the course of his representation of Synair. Although Defendants assert that Mr. Shosid undertook only those tasks outlined in the retainer agreement, the fact is that Mr. Shosid used his expertise to negotiate favorable terms in the amended and restated loan agreement, and such negotiation, while a part of the overall representation contemplated in the retainer agreement, did require the exercise of independent judgment by Mr. Shosid. Fourth, while neither Allen nor Mr. Shosid physically entered Tennessee, both conversed with attorneys for other parties located in Tennessee, sent documents into Tennessee, and drafted documents dealing with Tennessee law.

-12-

Defendants correctly point out that their opinion letter specifically states that the firm is not giving any opinions under Tennessee law. In spite of such disclaimer, however, the amended and restated loan agreement, which Mr. Shosid negotiated on Synair's behalf, specifically states that it will be interpreted according to the laws of Tennessee.

The particular differences in the transactions in *Masada* and this case likewise do not sufficiently distinguish the two cases. In *Masada*, Allen's client was from Texas, and he drafted documents in connection with the sale of property by a Tennessee limited partnership to a California partnership. 697 S.W.2d at 333. Although none of the parties to the instant transaction were organized under the laws of Tennessee and many of the entities did not otherwise have ties to Tennessee, Bell Nunnally's client Synair did have close ties with Tennessee since Tennessee serves as its principal place of business. Thus, Bell Nunnally's client was a Delaware corporation with close ties to Tennessee, and Mr. Shosid negotiated documents in connection with the sale of property by such corporation to a British company. The major difference appears to be that, while Allen's client had no ties to Tennessee, Bell Nunnally's client had close ties to Tennessee.

Defendants also contend that, unlike *Masada*, the location of the property in Tennessee was incidental to the legal work performed by Mr. Shosid. It is difficult to understand Defendants' characterization of the location of the property as "incidental" to the transaction. Bell Nunnally undertook the representation of Synair in connection with the sale of assets in Tennessee. As a part of that transaction, it was necessary to revise a loan agreement related to those assets. The amended and restated loan agreement negotiated by Mr. Shosid also deals with obligations related to other assets located in Tennessee, and the agreement purports to be governed by Tennessee law. The Court is

-13-

unconvinced by Defendants' assertion that the location of the property was incidental, given the evidence in the record.

In sum, it appears that Mr. Shosid's legal work on this transaction is quite similar to Allen's legal work on the transaction in *Masada*. Mr. Shosid and Bell Nunnally knew that Mr. Shosid's legal work was controlling the sale of certain assets located in Tennessee by a corporation with its principal place of business in Tennessee and reworking the obligations of such corporation relative to other assets located in Tennessee subject to the laws of Tennessee. As in *Masada*, both this litigation and the underlying litigation in state court arising from Defendants' legal work serve to highlight the importance of such work. *See Masada*, 697 S.W.2d at 335. Bell Nunnally and Mr. Shosid should have reasonably anticipated having to defend their actions in Tennessee. Consequently, the Court concludes that Plaintiffs have made out a *prima facie* case that Mr. Shosid and Bell Nunnally purposefully availed themselves of the privilege of doing business within Tennessee.

2. <u>Connection of Activities to Cause of Action</u>

Under the second prong of the *Mohasco* test, the cause of action must arise from the defendant's activities in the forum state. 401 F.2d at 381. It should be clear from the Court's discussion above that the cause of action in the instant case does, in fact, arise from Defendants' activities in Tennessee. It is precisely the legal work done by Bell Nunnally in connection with the transaction that led to this lawsuit. Plaintiffs have met their burden with regard to this element.

-14-

3.    *Substantial Connection with Tennessee*

Under the third element of the *Mohasco* test, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.* As in *Masada*, Tennessee has a substantial interest in the outcome of this litigation, since Plaintiff is a corporation with its principal place of business in Tennessee, the transaction at issue involved Tennessee property, and Tennessee law will govern the lawsuit. *See* 697 S.W.2d at 335. Plaintiffs have likewise met their burden with regard to this element.

Accordingly, because the Court finds that Plaintiffs have made a *prima facie* showing of personal jurisdiction, the Court will not dismiss Plaintiffs' complaint pursuant to Rule 12(b)(2). Defendants' Motion to Dismiss is **DENIED** in this regard.

**II.    VENUE**

Defendants seek the dismissal or transfer of the case under Rule 12(b)(3), arguing that venue in the Eastern District of Tennessee is improper. Defendants' argument appears to be three-fold. First, Defendants seem to request dismissal under 28 U.S.C. § 1406(a) because the Court does not have personal jurisdiction over Defendants. Second, Defendants seem to request dismissal under § 1406(a) because Tennessee is an inconvenient forum. Third, Defendants seem to request transfer of the case to the Northern District of Texas because it is a more convenient forum.

Defendants' second and third arguments are somewhat confusing. In their second argument, Defendants seem to be asking the Court to dismiss Plaintiff's complaint because Tennessee is an inconvenient forum; however, in support of this argument, Defendants cite

-15-

to § 1406(a). Section 1406(a), however, provides for the dismissal of a case only when venue is wrongly or improperly laid. *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964); *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 538 (6th Cir. 2002). Section 1404(a), on the other hand, provides for a transfer of venue when the venue chosen by Plaintiff is proper but inconvenient. *Van Dusen*, 376 U.S. at 634; *Kerobo*, 285 F.3d at 538-39. Similarly, in their third argument, Defendants seem to be asking the Court to transfer Plaintiff's complaint to a different venue because Tennessee is an inconvenient forum, but Defendants cite only to § 1406(a) in their argument. Because Defendants' articulation of their arguments leaves the Court unsure whether they seek dismissal and/or transfer pursuant to § 1404(a) or § 1406(a), the Court will analyze this case under both sections.

At the outset, the Court can dispose of Defendants' argument that the case should be dismissed or transferred because of lack of personal jurisdiction: the Court has determined that Defendants are subject to personal jurisdiction in this Court, so venue is appropriate in that respect.

### A. Dismissal or Transfer Under § 1406(a)

With regard to a motion to dismiss or transfer pursuant § 1406(a) because venue is wrongly laid, the plaintiff bears the burden of proving that venue is proper. *Gone to the Beach, LLC v. Choicepoint Servs., Inc.*, __ F. Supp. 2d __, 2006 WL 1645046, at *2 (W.D. Tenn. June 15, 2006). The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff. *Id.*

Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated. Plaintiffs contend that venue

is proper in the Eastern District of Tennessee because Defendants' negligent actions are subjecting Plaintiffs to damage in this district – specifically, Plaintiffs' actions have resulted in the potential foreclosure on property located in Hamilton County.  It is the legal work performed by Defendants relative to this property with which Plaintiffs take issue.  Further, Defendants sent signature pages into this district in connection with such legal work, and Plaintiffs allege that the attachment of those signature pages to documents that did not accurately reflect Plaintiffs' understanding of the deal was negligent and resulted in harm to Defendants in this district.  Defendants primarily argue that, because most of the legal work done by Defendants was performed in Texas, the appropriate venue is the Northern District of Texas.

While it is true that Defendants performed most of their legal work in Texas, a conclusion that a substantial part of the events giving rise to Plaintiffs' claims occurred in the Northern District of Texas does not foreclose the conclusion that a substantial part of the events giving rise to Plaintiffs' claims also occurred in the Eastern District of Tennessee.  *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998).  Section 1391(a)(2) does not require the Court to determine where the *most* substantial events giving rise to the claim occurred; on the contrary, venue is proper in *any* district where substantial activities took place.  28 U.S.C. § 1391(a)(2); *First of Mich. Corp.*, 141 F.3d at 263.

The Court concludes that the activities that took place in the Eastern District of Tennessee are substantial enough such that they give rise to venue in this district.  While venue likely is proper in the Northern District of Texas, it is also proper here.  Because venue is proper under § 1391, the provisions of § 1406(a) related to dismissal and transfer

-17-

do not apply.  Accordingly, Defendants' motion to dismiss or transfer pursuant to § 1406(a) is **DENIED**.

### B.    Transfer Under § 1404(a)

With regard to a motion to transfer pursuant to § 1404(a) because another venue is more convenient, the burden is on the moving party to establish the need for a change of venue.  *DeRoyal Indus., Inc. v. Hendricks Orthotic Prosthetic Enters., Inc.*, No. 3:04-CV-534, 2005 WL 1804528, at *5 (E.D. Tenn. July 28, 2005).  If the moving party fails to make such a showing, then the plaintiff's choice of forum will be given deference.  *Id.*

In deciding whether to transfer a case because the forum is inconvenient, the threshold consideration is whether the action could have been brought initially in the proposed transferee district.  *Id.*  In addition, the Court must consider several factors: (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; and (4) the location of the events that gave rise to the dispute. *Id.*  A Court may consider any factor that may make the eventual trial easy, expeditious, and inexpensive.  *Id.*  A transfer is not appropriate if the result is simply to shift the inconvenience from one party to another.  *Id.*

In this instance, it is clear that this action could have been brought in the Northern District of Texas since both Defendants reside within that district.  28 U.S.C. § 1391(a).  As to the factors the Court must consider, Defendants make no arguments in an effort to show that the evidence supports a transfer – they only state that "Tennessee is an inconvenient forum for resolution of claims arising from transactions occurring in the State of Texas" and "Texas has far more interest than any other State in the resolution of the allegations of the

-18-

Complaint." The Court will endeavor, however, to analyze the factors outlined above based on the record.

First, Defendants have not identified who they expect would testify as witnesses at a trial, though it is fair to assume based on the record that Mr. Shosid, Mr. Gomberg, and Mr. Young, AmSouth's local counsel, likely would testify. Mr. Shosid is located in Texas, Mr. Gomberg in California, and Mr. Young in Chattanooga. While is not clear from this list that the Eastern District of Tennessee is the most convenient forum with regard to witnesses, it also is not clear that the Northern District of Texas is any more convenient than this district. Second, the residences of the parties are as follows: Mr. Shosid - Texas; Bell Nunnally - Texas; Mr. Gomberg - California; Synair - Delaware. Synair may also be thought of as being a resident of Tennessee because its principal place of business is Tennessee. Thus, while Texas is more convenient for the Defendants, Tennessee is more convenient for Synair. Both forums are likely inconvenient for Mr. Gomberg, though Tennessee may be slightly more convenient since Synair has business locations there. Third, it is not entirely clear where the location of sources of proof are. There are likely some sources of proof in Texas at the law offices of Bell Nunnally. There are likely some sources of proof in Tennessee, either at Synair's offices or Mr. Young's office. Mr. Gomberg likely also has some sources of proof in his office, which may be in California or elsewhere. Thus, the location of the sources of proof does not necessarily point to Texas as the most convenient forum. Fourth, the events that gave rise to the litigation occurred partially in Texas and partially in Tennessee. While Mr. Shosid performed his legal work primarily in Texas, he communicated with persons in other states – California and Tennessee – as part of that work. He also sent signature pages into Tennessee.

Considering all of these factors together, the Court is unable to conclude that Defendants have met their burden of proving that the Northern District of Texas is more convenient than the Eastern District of Tennessee.

Accordingly, Defendants' request to transfer the case pursuant to § 1404(a) is **DENIED**.

### III. PLAINTIFF GOMBERG'S STANDING

Finally, Defendants assert that Plaintiff Gomberg should be dismissed from this action pursuant to Rule 12(b)(6) because he does not have standing to assert a claim, as Defendants did not represent Mr. Gomberg in his individual or personal capacity.

Because Defendants and Plaintiffs have submitted and relied on materials outside the pleadings, the Court will treat Defendants' motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

#### A. Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the

credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### B.    Facts

The relevant facts, viewed in the light most favorable to Plaintiff, are as follows.

In connection with the transaction involving Synair, CIL, the Trust, and British Vita, Mr. Shosid also represented Mr. Gomberg as his personal attorney. (Court Doc. No. 12-2, Gomberg Dep. 27.) In that capacity, Mr. Shosid was responsible for negotiating with British Vita regarding the sale of Mr. Gomberg's personal stock in Synair and his personal property. (*Id.* at 27-28.) In addition, because Mr. Gomberg had certain outstanding loan

-21-

obligations to AmSouth (Compl. ¶ V), Mr. Shosid was also responsible for making sure that Mr. Gomberg got the best possible relationship with AmSouth in connection with the modifications to the loan agreement (Gomberg Dep. 28). At some point thereafter, Mr. Shosid was also involved in the computation of Mr. Gomberg's personal taxes resulting from the British Vita transaction. (*Id.*)

The facts regarding Mr. Shosid's representation of Mr. Gomberg are disputed, with Mr. Shosid stating in his affidavit that he never undertook the representation of Mr. Gomberg in any capacity. (Shosid Aff. ¶ 10.)[3]

The amended and restated loan agreement does not list Mr. Gomberg as a party to the agreement, and his signature indicates that he signed the document in his capacity as President of Synair, rather than in his individual capacity.

## C. Analysis

To prevail on their motion for summary judgment, Defendants must establish that there is no genuine issue of material fact with respect to Mr. Gomberg's standing and that they are entitled to judgment as a matter of law. Defendants have failed in the first regard: there is a genuine issue of material fact with respect to Mr. Gomberg's standing.

The retainer letter outlining Bell Nunnally's representation in connection with the transaction states that Bell Nunnally's clients were Synair, CIL, and the Trust, but Mr. Gomberg states in his deposition that Bell Nunnally also represented him in his personal

---

[3]    In their Reply Memorandum in Support of Motion to Dismiss [Court Doc. No. 14], Defendants also rely on portions of Mr. Shosid's deposition in support of their contention that Defendants did not represent Mr. Gomberg in his personal capacity. Although other portions of Mr. Shosid's deposition were placed in the record by Plaintiffs, the particular portions of the deposition cited by Defendants in their Reply Memorandum were not included as exhibits to either Plaintiffs' response or Defendants' reply. Accordingly, those particular portions of the deposition cited by Defendants in their Reply Memorandum are not properly in the record before the Court.

-22-

capacity. While the retainer letter does not reflect this personal representation, the Court, viewing the facts in the light most favorable to Plaintiff, recognizes that it is possible that the personal representation of Mr. Gomberg could have existed outside the confines of the retainer letter directed to Synair, CIL, and the Trust. Thus, there exists a genuine issue of material fact with respect to whether Bell Nunnally represented Mr. Gomberg in his personal capacity.

Further, although the amended and restated loan agreement does not list Mr. Gomberg as a party to the agreement in his personal capacity, there are allegations in the complaint and statements by Mr. Gomberg in his deposition that lead to the conclusion that Mr. Gomberg had some personal obligations to AmSouth that were affected by the renegotiation of the loan agreement. (Compl. ¶ V; Gomberg Dep. 28.) Thus, viewing the facts in the light most favorable to Plaintiff, the Court must conclude that there is a genuine issue of material fact with respect to whether the alleged professional negligence by Defendants in the handling of the loan agreement and signature pages thereto caused harm to Plaintiff Gomberg in his personal capacity.

Accordingly, because Defendants have failed to establish that there is no genuine issue of material fact at issue with respect to Mr. Gomberg's standing, Defendants' Motion to Dismiss, which the Court has treated as a motion for summary judgment, must be **DENIED**.

## IV.    CONCLUSION

Defendants' Motion to Dismiss [Court Doc. No. 4] is **DENIED** in all respects.

SO ORDERED this 6th day of July, 2006.


_____
*s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE